GREEN v. OLD KENT BANK & TRUST COMPANY.

1. JUDGMENT—RES JUDICATA—PROBATE ACCOUNTING.

Order allowing account of executor in probate court does not adjudicate matters not disclosed by account, and not considered and passed on by court, so as to bar a cause of action based on such matters.

2. SAME—PROBATE ACCOUNTING—CONSTRUCTION OF WILL—RES JUDICATA.

Order allowing account of executor in probate court does not necessarily amount to an order construing will, so as to bar any further action for construction of the will by circuit court.

3. SAME—PROBATE ACCOUNTING—CONSTRUCTION OF WILL—RES JUDICATA.

Order allowing account of one co-executor and final account of another co-executor in probate court held, not to amount to construction of will so as to determine that co-executors had complied with will and had not breached fiduciary duty.

4. SAME—PROBATE ACCOUNTING—IMPROPER TRANSACTIONS—RES JUDICATA.

Order allowing account of one co-executor and final account and discharge of other co-executor in probate court held, not to adjudicate plaintiffs' allegations that co-executors sold stock contrary to testator's intentions, caused unnecessary income tax liability of estate, and made improper sales of stock at less than market, so as to bar cause of action founded on these allegations.

REFERENCES FOR POINTS IN HEADNOTES

[1] 30A Am Jur, Judgments §§ 312, 337.
[2-5] 21 Am Jur, Executors and Administrators § 488.

5. APPEAL AND ERROR—REMAND—EXECUTORS AND ADMINISTRATORS—
   QUESTIONS FOR TRIER OF FACTS.
   Determination that orders allowing accounts of co-executors and
   discharging of them were not a bar to later action by bene-
   ficiaries of trust for construction of will and for damages
   for failure of fiduciaries because of their breach of trust did
   not determine whether ratification of or consent to the actions
   of the co-executors did or did not occur, such being questions
   of fact to be determined on remand after reversal of acceler-
   ated judgments for defendant co-executor.

Appeal from Kent; Searl (Fred N.), J. Submit-
ted Division 3 October 5, 1965, at Grand Rapids.
(Docket No. 213.)   Decided July 12, 1966.

Complaint by Nova Muir Green, Nona Muir
Turner, and Novia Muir, daughters of James A.
Muir, against Old Kent Bank & Trust Company and
John R. Janssen, co-executors of the will of James
A. Muir, for construction of the will, and for dam-
ages for alleged violation of duties by defendants.
Partial accelerated judgment for defendants. Plain-
tiffs appeal. Reversed and remanded for trial.

*Raymond, Chirco, Fletcher & Donaldson* (*Peter
I. Chirco, J. Bruce Donaldson,* and *Terrence E.
Keating,* of counsel), for plaintiffs.

*Warner, Norcross & Judd* (*Lewis A. Engman,* of
counsel), for defendants.

T. G. KAVANAGH, J. The factual background nec-
essary for decision in this case is taken from the
parties' concise statement of proceedings and facts
submitted on this appeal.

James A. Muir died testate August 19, 1961.
During his lifetime, he had been an employee, and
for part of the time an officer of Wolverine Shoe &

Tanning Corporation. In his estate he left 20,629 shares of stock in Wolverine. His will in part reads:

"4(a). I direct that, to the maximum extent reasonably possible, the stock which I own at my death in Wolverine Shoe & Tanning Corporation shall be allocated to this trust. * * *

"9(K). In my opinion, the investments of my estate and of the trust in the stock of Wolverine Shoe & Tanning Corporation are investments which may well be retained by my trustees, and they are therefore directed to retain as much as possible of said stock in said trust until, in their opinion, jointly arrived at, it is to the advantage of my estate to sell the same, and they shall be completely and fully discharged from any and all liability for retaining such stock, notwithstanding the fact that such investment might be inadvisable from the viewpoint of diversification or does not qualify as an investment legal for investment of trust funds under the laws of the State of Michigan."

The income of the trust is payable to the testator's widow Nova Doyle Muir, for life, and upon her death, the remainder at specified age, to his three daughters, or their issue by representation. The plaintiffs are the testator's three daughters.

The testator named the two defendants, John R. Janssen and the Old Kent Bank & Trust Company, as executors and trustees. On September 29, 1961, the will was admitted to probate and the defendants were appointed and qualified as executors. On November 28, 1961, the executors commenced to make sales of Wolverine stock. By January 22, 1962, twelve sales had been made, thereby disposing of 5,500 shares at prices varying from $33 to $50 per share.

On March 2, 1962, Mr. Heikkinen, an attorney, wrote a letter to the Old Kent Bank in which he advised that he was writing on behalf of the widow

and one of the daughters, Nona Turner. He stated
that he had examined the will of Mr. Muir, that he
was aware of the sale of the 5,500 shares, and that
such sales, in view of paragraph 9(k) of the will,
were against the wishes of the testator and since
the stock was then selling at $58 per share, the sales
were not in the best interest of the estate. He re-
quested a conference and subsequently had one with
the attorney representing the co-executors.

On March 15, 1952, Mr. Heikkinen wrote a letter
to the counsel for the co-executors in which he stated
that, after conference with the widow and Nona
Turner, they had asked him to register strong ob-
jection to the sale of any Wolverine stock until the
widow's return from Florida on March 24, 1962.
He requested an appointment to discuss the situa-
tion, and further advised that the widow had asked
him to inform the co-executors that her other two
daughters, Nova Green and Novia Muir, had in-
dicated to her that they opposed any further sale
of the stock at that time. He added that they had
not been heard from directly.

At a conference held April 4, 1962, an arrangement
was made that further sales would continue, but
that such sales would be reported to the widow and
Mr. Heikkinen. (The concise statement does not
indicate who was present at the conference nor what
was discussed.) Beginning April 4, 1962, sales again
commenced and written reports were promptly sent.

On July 31, 1962, the co-executor filed two ac-
counts, the first covering the period August 19, 1961,
to December 31, 1961, and the second designated
"Special Account of Old Kent Bank & Trust and
the Final Account of John R. Janssen," covered the
period from December 31, 1961, to July 31, 1962.
Janssen resigned as co-executor effective July 31,
1962.

The petition prayed that the accounts be allowed and that Mr. Janssen be discharged of his liability as co-executor. The accounts were detailed as to all of the transactions of the co-executors.

Counsel for the co-executors transmitted copies of the petition for allowance of the accounts to Mr. Heikkinen together with copies of waiver of notice and consent to allowance of accounts to be signed by the widow and her three daughters. Also enclosed was a copy of the resignation of Mr. Janssen as co-executor, effective July 31, 1962. The covering letter stated in pertinent part:

"In accordance with our previous conferences, this is to confirm that the action of Mr. Janssen in submitting his resignation is pursuant to the request of Mrs. Muir and her three daughters for personal reasons and without any inference or suggestion that any actions taken by Mr. Janssen as co-executor have been unethical or improper in any sense. His resignation is submitted strictly upon the basis of this understanding, your acknowledgment of which would be appreciated."

On August 8, 1962, Mr. Heikkinen, in answer to the above correspondence wrote:

"We have gone over the tentative determination of inheritance tax and it appears to be in order.

"We have turned over the accountings to the heirs-at-law, and are presently waiting word from them. As soon as we receive the signed waivers from them, we will forward them to you, assuming of course, there are no questions concerning the accounting.
\* \* \*

"In accepting the resignation of Mr. Janssen as co-executor, Mrs. Muir and her daughters are making no claim that Mr. Janssen has performed any illegal act."

The waivers and consents were executed by the widow and her three daughters and read:

"The undersigned being the persons interested in said estate, do hereby acknowledge due notice of the hearing on the petition of Old Kent Bank & Trust Company and John R. Janssen for allowance of first account as co-executors, covering the period August 19, 1961 to December 31, 1961, and special account of Old Kent Bank & Trust Company and final account of John R. Janssen, co-executors, covering the period December 31, 1961, to July 31, 1962, filed in said court herewith and waive further notice thereof, and do hereby consent to the granting of said petition forthwith."

On August 16, 1962, the probate court entered an order allowing the accounts of the co-executors and on August 20, 1962, the court entered an order discharging the co-executor, John R. Janssen, as follows:

"WHEREAS, It appears by the records and proceedings of said court that you have in all things fully and justly performed and discharged all and singular duties and obligations which by law and the orders of said court were required and enjoined upon you as co-executor of said estate, and that you have duly and fully accounted for and administered all of said estate which has come into your possession in the manner provided by law;

"Now, THEREFORE, you are hereby discharged, exonerated and acquitted from any and all liabilities concerning your said trust, and your doings, and proceedings are forever quieted, your official bond cancelled and your letters testamentary heretofore granted are hereby revoked and annulled."

No appeal was taken from these orders.

Since July 31, 1962, the Old Kent Bank & Trust Company, as executor, has made further sales of Wolverine stock.

The present action was commenced November 5, 1963, by the testator's daughters as plaintiffs in the circuit court for the county of Kent seeking:

1. A construction of the will of James Muir, deceased.

2. A declaration that the sale, by the defendant co-executors, of certain shares of Wolverine Shoe & Tanning Corporation constituted a violation of their duties.

3. A holding that such sales resulted in unnecessary income tax and for this reason constituted a breach of trust.

The plaintiffs sought restoration of the shares sold, damages for the losses incurred thereby and other incidental relief.

The defendants, prior to answer, filed a motion for accelerated judgment on the grounds that:

1. Plaintiffs' claims were barred because of the prior judgment of the probate court in the allowance of the co-executors' accounts.

2. Consent by the plaintiffs to the action taken by defendants.

3. Lack of jurisdiction of the circuit court to the extent that plaintiffs were seeking an accounting from defendants, the probate court having assumed jurisdiction.

The defendants' motion was supported by certain undisputed probate court records, affidavits and other documents. Plaintiffs filed certain affidavits and other material in opposition. After hearing, the circuit judge filed an opinion and later a supplemental memorandum. On May 15, 1964, an order was entered (1) dismissing the action as to defendant John R. Janssen and (2) dismissing the action as to Old Kent insofar as it pertained to conduct prior to July 31, 1962. The order was based upon the circuit judge's opinion that "as to the sales made

prior to July 31, 1962, the investments made prior to that date, and the income tax incurred prior to that date, the order of the probate court allowing the two accounts and the discharge of Mr. Janssen are *res judicata.*"

From this order granting in part defendants' motion for accelerated judgment plaintiffs appeal.

In substance plaintiffs contend that the defendants breached their fiduciary duty to plaintiffs in that:

1. The defendants sold stock in Wolverine Shoe & Tanning Corporation contrary to the direction of the testator and substantially in excess of that needed to fund administration expenses. Specifically, plaintiffs offered to prove that the co-executor had sold 7,480 Wolverine shares for $394,997.17 while being in possession of an estate and cash analysis of the estate dated October 25, 1961, and prepared by Old Kent, which projected the cash requirements for administration at $139,523.15.

2. In the first six months after death, the defendants sold 5,500 Wolverine shares resulting in a gain of $130,594. The estate and cash analysis of the estate, as prepared by Old Kent, shows cash requirements of administration in that same period of $8,000 and cash available without any stock sale of $12,838.81. Thus plaintiffs conclude no additional cash was required and no stock sales necessary.

Under the provisions of the internal revenue code the sale of the stock by the estate during the first six months after death subjected the gain to an ordinary income tax rate progressing up to 81% as a short-term capital gain. If the stock had been held beyond the six-month period, the gain on sale would have been treated as a long-term capital gain and subject only to a maximum rate of 25%. Plaintiffs in their brief characterize this sale by the co-executors as a "tax blunder."

3. Co-executor Janssen arranged a sale of 800 shares of Wolverine to members of the board of directors of Wolverine for a price of almost $1.50 per share less than another sale made on the same day. Janssen was an officer of Wolverine at the time. Plaintiffs contend this raises an issue concerning the propriety of the acts of the co-executors.

The circuit court, in holding that the probate accountings constituted a bar to the instant action relative to all transactions prior to July 31, 1962, relied upon CL 1948, § 704.39 (Stat Ann 1962 Rev § 27.3178[290]), which states, in pertinent part:

"The order of the probate court allowing any account of a fiduciary shall, subject to the right of appeal, and except in case of fraudulent concealment or fraudulent misrepresentation on the part of the fiduciary be final and conclusive against all persons in any way interested therein who are legally competent at the date of such order."

Plaintiffs acknowledge that the accounts set out the *fact* of the sales, but they contend that the accounts did not disclose to the beneficiaries the prejudicial collateral information of the direction in the will to retain the Wolverine shares, the tax impact of sales in the first six months and the less-than-market price received for sales to the Wolverine insiders. Plaintiffs contend that Old Kent as a corporate fiduciary, has a special duty to bring to the attention of the beneficiaries all matters concerning the administration of the estate. Plaintiffs further contend that the failure of the co-executors, in soliciting the consents to the accounts from plaintiffs, to disclose this prejudicial information constitutes "fraudulent concealment" on their part and thus, the probate court order allowing the accounts is not final and conclusive.

Plaintiffs cite *MacKenzie* v. *Union Guardian Trust Company* (1933), 262 Mich 563, in support of their contention that the probate court order allowing the accounts did not amount to a construction of the will, or, in other words, that the probate court did not thereby determine that the sale of Wolverine stock was in every instance in accordance with the will of the testator, not harmful to the estate, and not in derogation of the fiduciary duties imposed upon the co-executors.

In *MacKenzie, supra,* the corporate fiduciary was held liable for the loss to the beneficiary occasioned by the executor's failure to administer properly the estate. The court held that the plaintiffs' bill to construe the will was not barred by prior probate approval of three accounts made by the executor. The Court, at pages 586, 587 stated:

"The rule to be deduced from the authorities is that an annual or a final account of an executor or administrator is conclusive as to all matters which are before the court and are adjudicated in its allowance, but the order of allowance is not final or conclusive and does not constitute an adjudication in matters which were not before it upon the accounting and which were not considered by the court or passed upon in allowing the account of the executor of the estate.

"There is nothing in the annual accounts of defendant, heard and allowed before the bill in this case was filed, which showed defendant had converted the trust estate provided to be set up for plaintiff Ruth Day MacKenzie, or that the probate court construed or intended to construe the will of deceased so as to permit defendant so to do. The allowance of these annual accounts does not amount to a former adjudication or a construction of the will involved adverse to plaintiffs' claims.

"Defendant failed to comply with the will of testator. It was its duty as executor to comply therewith so far as possible; cause the $50,000 trust fund to be set up and invested within the period of one year. It is claimed defendant may not be held liable as a trustee because it never qualified as such; that the office of executor and trustee are separate and distinct, and defendant may not be held liable as a trustee when it did not act as such. *Gibney* v. *Allen,* 156 Mich 301. That defendant did not qualify as trustee is no defense. It did act as executor. What plaintiffs complain of is the failure of defendant as executor to carry out the terms of the will of deceased; accept the trust created by the will or ask the court to appoint a trustee to carry out its provisions; keeping the money in its hands belonging to such trust, which should have been created and administered as such, as executor; converting it to the use of, and attempting to administer it as a part of, the general estate of deceased, in violation of the terms of the will, in fraud of plaintiff's rights and to her injury and damage. It makes no difference, under the facts, whether defendant is treated as executor or trustee. It was the duty of defendant to carry out the terms of the will, properly collect the assets of the estate, cause such trust to be set up, and to turn the sum of $50,000 bequeathed to plaintiff over to it, in trust, to be invested and the principal and accumulations thereon paid to plaintiff as provided in the will, and defendant is liable to plaintiff for not so doing."

We agree with plaintiffs. The probate court order in the instant case did not adjudicate plaintiffs' allegations, as yet unanswered by defendants, that the co-executors sold Wolverine stock contrary to the testator's intentions, committed a culpable tax blunder and made an improper sale of stock to Wolverine insiders at less than market price. Plain-

tiffs' claim concerning these transactions, including all those prior to July 31, 1962, are not barred by the probate court order allowing the accounts, nor will the order discharging co-executor Janssen bar plaintiffs' claims against him.

Defendants cite the case of *Riebow* v. *Ensch* (1922), 220 Mich 450, for the proposition that a probate court has the power to construe a will when neither a specific petition for construction nor an order assigning residue was before it. While we accept this as a general rule of law, we note that a petition was filed in the probate court in *Riebow*, *supra*, to determine whether certain real estate belonged to one probate estate or another. And as the court stated at page 454: "To determine that question the *probate court had to construe the will, and did construe it.*" Neither this case, nor others cited by defendants constitute authority for our holding that the probate order allowing the accounts amounted to a construction of the will herein. It is clear to us that the probate court never construed the will relative to the allegations made by the plaintiffs herein.

In holding that the probate court orders allowing the accounts and discharging co-executor Janssen do not constitute a bar to plaintiffs' cause of action, we have not determined whether ratification of or consent to the actions of the co-executors did or did not occur. This and other questions of fact and law must be determined by trial on the merits.

The order of the circuit court granting the motion for accelerated judgment by defendant Janssen is set aside, the cause as to him is hereby reinstated and remanded for trial.

The order of the circuit court granting the motion for accelerated judgment by defendant Old Kent

Bank & Trust Company as it pertains to the conduct
of the executors prior to July 31, 1962, is set aside
and the cause remanded for trial.

Appellants may tax their costs.

BURNS, P. J., and HOLBROOK, J., concurred.