SINCLAIR v MANUFACTURERS NATIONAL BANK OF DETROIT

1. EXECUTORS AND ADMINISTRATORS—SALE OF STOCK—FRAUD—PRO-
    BATE COURT—APPROVAL OF SALE—WILLS—POWER OF SALE—
    CONFLICT OF INTEREST.

    A bank and the president of a corporation, who were co-executors
    of an estate which was composed mainly of shares of stock in
    the corporation, committed a fraud on the probate court where
    the bank petitioned the court for authority to sell a large block
    of the shares to one of the members of a stockholders' group in
    which the co-executor president was interested and obtained
    the court's approval of the sale, and where it was later discov-
    ered that a competing group of stockholders had offered to buy
    all the stock at a higher price, and that this information had
    not been given to the probate court; a claim that the sale was
    proper under a broad power of sale in the will has no support
    because the bank failed to exercise the power of sale and
    instead sought the authority of the probate court to sell the
    stock, and the co-executor president did not properly exercise
    his power of sale over the stock because of his conflict of
    interest (MCLA 704.37).

2. EXECUTORS AND ADMINISTRATORS—ACCOUNTS—RES JUDICATA—PRO-
    BATE COURT—FRAUD ON THE COURT.

    The approval by a probate court of co-executors' second account,
    which included the sale of stock to one of the members of a
    stockholders' group in which one of the co-executors was inter-
    ested, where the co-executors perpetrated a fraud on the court
    by not informing the court that more money had been offered
    for the stock by a competing stockholder group, did not bar a
    subsequent action by a beneficiary of the estate against one of
    the co-executors because of the fraud (MCLA 704.39).

3. LIMITATION OF ACTIONS—EXECUTORS AND ADMINISTRATORS—FRAUD
    ON THE COURT—SALE OF STOCK—LACHES.

    A beneficiary of an estate in which a fraud had been perpetrated
    on the probate court by the co-executors in the matter of the

---

REFERENCE FOR POINTS IN HEADNOTES
[1–3] 31 Am Jur 2d, Executors and Administrators § 227 *et seq.*

sale of stock is not barred by the statute of limitations or the doctrine of laches where he has brought an action against one of the co-executors for damages for selling the stock for less than could have been obtained less than two years after he discovered the alleged fraud and concealments (MCLA 700.5855).

Appeal from Wayne, George N. Bashara, Jr., J. Submitted Division 1 May 14, 1974, at Detroit. (Docket No. 14120.) Decided September 24, 1974.

Complaint by David Sinclair against Manufacturers National Bank of Detroit for monies lost in a stock sale. Summary judgment for defendant. Plaintiff appeals. Reversed and remanded for trial.

*Dice, Sweeney & Sullivan, P. C.* (by *Joseph Levin)*, for plaintiff.

*Bodman, Longley, Bogle, Armstrong & Dahling* (by *James T. Heimbuch)*, and *Wurzer, Higgins & Starrs* (by *Robert A. Macdonell)*, for defendant.

Before: V. J. BRENNAN, P. J., and R. B. BURNS and R. L. SMITH,* JJ.

R. L. SMITH, J. This is an appeal from a summary judgment dismissing plaintiff David Sinclair's complaint against defendant Manufacturers National Bank of Detroit for failure to state a claim upon which relief can be granted. GCR 1963, 117.2(1). We reverse and remand.

The plaintiff is the sole beneficiary of the estate of his father, Wayne Sinclair, who died in 1961. The bank and one Douglas T. Moore were co-executors of the estate. The principal asset of the estate was 55,905 shares of stock in LeMaire Ma-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

chine Tool Company, a company which the deceased had developed and managed prior to his death. In 1963, Moore was president of LeMaire and a member of a group of stockholders in the company who sought to gain a controlling interest or at least to prevent a competing group of stockholders from gaining a controlling interest. The estate's 55,905 shares provided effective working control of the corporation. If sold as a block the estate's shares had a premium value per share above the value of other shares which were not part of a controlling block.

In 1963, the bank as one of the co-executors of this estate petitioned the probate court for authority to sell, at $2.50 per share, 20,000 shares of LeMaire stock to one of the members of the stockholders' group in which Moore was interested. The petition recited that Moore was president of LeMaire and a minority stockholder. On June 5, 1963, the probate court approved the sale and the sale was subsequently made. On June 19, 1963, in a petition for confirmation of the sale of the 20,000 shares at $2.50 per share the bank represented that:

" * * * your petitioners do not have any offer for said 20,000 shares or for any other number of shares of said stock in an amount greater than that heretofore made by said Carl K. Miller and remain in their belief that the same is the best price obtainable therefore."

In February 1965, LeMaire filed for Chapter XI bankruptcy. On October 27, 1965, the bank's petition to the probate court for authorization to sell the remaining 35,905 shares was granted and the stock was sold for 50¢ a share. On December 6, 1966, the plaintiff, then a minor, by his next friend, filed a complaint in the United States

District Court against the bank, alleging that the bank had negligently sold the stock for less than its alleged market value of $5 per share. In January 1967, the defendant bank and Moore as co-executors petitioned the probate court for approval of their second account which included both the 1963 and 1965 sales of the LeMaire stock. Plaintiff Sinclair filed written objections to this petition alleging as grounds the allegation as set forth in the Federal suit. In September 1967, the probate court approved the second account. It is plaintiff's claim that in so doing the probate court expressly noted on the record that the court was not adjudicating the merits of Sinclair's pending claims against the bank in the Federal action.

In a discovery proceeding in October 1969, in the Federal suit, the plaintiff claims he first learned of an offer made to the bank prior to June 1963 by the competing group of stockholders in which the group offered to purchase all of the 55,905 shares for $3.50 a share. As a result of this newly-discovered evidence plaintiff, following dismissal of the Federal suit on jurisdictional grounds[1], filed the instant suit against the bank alleging that the bank fraudulently concealed and recklessly, with gross negligence, and negligence failed to disclose to the beneficiary and to the probate court the existence of the $3.50 offer with resulting damage to the beneficiary of the difference of the selling price and the larger offer.

The trial court, on April 6, 1972, granted defendant bank a summary judgment on the ground that the plaintiff had failed to state a claim upon which relief could be granted. In its opinion the trial court referred to the will of Wayne Sinclair which conferred "[u]pon my co-executors or any adminis-

[1] *Starr v Rupp*, 421 F2d 999 (CA 6, 1970).

trator with the will annexed all of the powers and authority herein given and conferred upon my trustee" and which conferred upon the trustee the power to sell trust property and any part thereof "[u]pon such terms as in the absolute and uncontrolled discretion of said trustee may seem expedient and proper". The trial court stated in its opinion "[t]herefore the trustee clearly had the power and authority to sell any asset of the estate even without court authority".

To this finding by the trial court plaintiff responds by claiming that the bank and Moore as coexecutors did not in fact exercise their power of sale over the assets of the estate but for obvious reasons, Moore's conflict of interest, sought the permission of the probate court to make the sale to Moore's group but without full disclosure of all pertinent facts. It is apparent that the bank sought to protect itself from surcharge or a claim of fraud by petitioning the probate court for authority to sell. MCLA 704.37; MSA 27.3178(288). *In re Tolfree Estate,* 347 Mich 272; 79 NW2d 629 (1956). We agree with the plaintiff's contention that the bank failed to exercise any power of sale bestowed on it by the will but instead sought the authority of the probate court to sell the stock to Moore's group. In so doing the bank failed in its duty to the court to disclose all the information at hand pertaining to the sale and its effect on the estate and right to the beneficiary.[2] This was fraud

---

[2] 1 Restatement Trusts 2d, § 170, p 364.

"§ 170. Duty of Loyalty

"(1) The trustee is under a duty to the beneficiary to administer the trust solely in the interest of the beneficiary.

"(2) The trustee in dealing with the beneficiary on the trustee's own account is under a duty to the beneficiary to deal fairly with him and to communicate to him all material facts in connection with the transaction which the trustee knows or should know."

Under the above statements we find the following comments by the authors:

on the probate court. We can only speculate what that court would have done with the bank's petition had it knowledge of all the facts. Plaintiff is entitled to an adjudication on the merits of this question. *Green v Old Kent Bank & Trust Co,* 3 Mich App 654; 143 NW2d 581 (1966).

We find no bar to this action in the approval of the second account by the probate court in view of the allegations of the complaint before us. MCLA 704.39; MSA 27.3178(290); *Green v Old Kent Bank & Trust Co, supra.*

We find no bar to this action in the statute of limitations or the doctrine of laches in view of the above factual situation. Plaintiff brought this ac-

---

"b. *Sale of trust property to the trustee individually.* A trustee with power to sell trust property is under a duty not to sell to himself either by private sale or at auction, whether the property has a market price or not, and whether or not the trustee makes a profit thereby. It is immaterial that the trustee acts in good faith in purchasing trust property for himself, and that he pays a fair consideration.

"The trustee cannot properly purchase trust property for himself even though he does not make the sale.

\* \* \*

"Where there are several trustees, one of them cannot properly purchase trust property for himself, although his co-trustees are not personally interested in the purchase and consent to the sale.

\* \* \*

"c. *Where trustee has a personal interest in the purchase.* The trustee violates his duty to the beneficiary not only where he purchases trust property for himself individually, but also where he has a personal interest in the purchase of such a substantial nature that it might affect his judgment in making the sale. Thus, a trustee violates his duty if he sells trust property to a firm of which he is a member or to a corporation in which he has a controlling or substantial interest.

\* \* \*

"f. *Purchase by trustee with approval of court.* The trustee can properly purchase trust property for himself with the approval of the court. The court will permit a trustee to purchase trust property only if in its opinion such purchase is for the best interest of the beneficiary. Ordinarily the court will not permit a trustee to purchase trust property if there are other available purchasers willing to pay the same price that the trustee is willing to pay."

tion on July 30, 1971, having discovered the alleged fraud and concealments in October 1969, less than two years having transpired. MCLA 600.5855; MSA 27A.5855.

We find no election of remedies, splitting of a cause of action, or incapacity to sue that would bar this action. *Green v Old Kent Bank & Trust Co, supra; MacKenzie v Union Guardian Trust Co,* 262 Mich 563; 247 NW 914 (1933).

Reversed and remanded for trial. Costs to the plaintiff.

All concurred.