Sue Ellen Baker JAMES,
Plaintiff-Appellant,

v.

GERBER PRODUCTS COMPANY et al.,
Defendants-Appellees.

No. 76–2483.

United States Court of Appeals,
Sixth Circuit.

Argued June 12, 1978.

Decided Nov. 21, 1978.

John H. Schomer, Michael McGuigan, Dykema, Gossett, Spencer, Goodnow & Trigg, Jackson, Mich., for plaintiff-appellant.

Harold S. Sawyer and Roger M. Clark, Douglas W. Hillman, Hillman, Baxter & Hammond, Roger M. Clark, Grand Rapids, Mich., for defendants-appellees.

Before WEICK and LIVELY, Circuit Judges, and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

Plaintiff was one of three remaindermen beneficiaries of two testamentary trusts, the Helen Gerber Trust and the Cornelius McCarty Trust, that were administered by the Old State Bank of Fremont (Bank), a Michigan corporation. Various initial inventories of the trusts revealed that substantial portions of the trusts' assets consisted of stock of the Gerber Products Company (Gerber). With the avowed purpose of diversifying these assets, the trust committee of the Bank authorized the sales of a total of 15,000 shares of the Gerber stock in 1966 and 1968. On both occasions the shares were sold directly, without brokerage commissions, to Gerber at prices equal to the prices then prevailing on the New York Stock Exchange. In 1966 the trust committee of the Bank included two officers and directors of Gerber, and in 1966 and 1968 the board of directors of the Bank included four officers and directors of Gerber. Shortly after each of the sales, Gerber released improved earnings figures that resulted in substantial increases in the trading prices of its shares.

The history of the judicial proceedings pertaining to the present action begins with the state probate court hearings at which the trustee filings of defendant Bank were

reviewed and approved. Michigan law requires a testamentary trustee to file an annual accounting with the probate court, Mich.Comp.Laws § 704.38, and the Bank filed accountings for 1966 and 1968 as required by the state's statutory provisions. In accordance with probate court practice, the accountings detailed several specifics of the Gerber stock sales but did not indicate that Gerber was the purchaser. Plaintiff received the statutory notice of the probate hearings, but did not make any objections to the allowance of the accountings.

It was not until July, 1970 that plaintiff first challenged the propriety of the sales in question. At that time, plaintiff brought an action in the federal district court that charged Gerber and the trustee Bank with various violations of the federal securities laws, specifically 15 U.S.C. § 78j(b) and rule 10b–5 promulgated thereunder,[1] and under pendent jurisdiction with violations of the state fiduciary laws.[2] On appeal this Court held that plaintiff had standing to bring an action under 15 U.S.C. § 78j(b) and rule 10b–5,[3] and the case was remanded. *James*

*v. Gerber Products*, 483 F.2d 944 (6th Cir. 1973). At the trial which followed, a jury found for all defendants on all of plaintiff's claims and theories. The district court denied plaintiff's motion for a judgment notwithstanding the verdict, and dismissed plaintiff's claim of fiduciary violations on the ground that the probate court judgments are res judicata. We affirm.

## I

There is a judicially implied private right of action for civil damages due to a violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*, as amended (1975). *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). One of the settled elements of such action for fraudulent or deceptive conduct in connection with the purchase or sale of a security is the existence of material, undisclosed information. *See Arber v. Essex Wire Corporation*, 490 F.2d 414 (6th Cir. 1974); *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833 (2d Cir. 1968). In the present case, plaintiff maintains that

1. Section 10 of the Securities Exchange Act of 1934 provides in pertinent part that:

   "It shall be lawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

   \*  \*  \*  \*  \*  \*

   (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

   15 U.S.C. § 78j(b).

   Rule 10b–5 provides that:

   "It shall be unlawful for any person, directly or indirectly by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

   (a) To employ any device, scheme or artifice to defraud,

   (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make statements made, in the light of the circumstances under which they were made, not misleading, or

   (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

   17 C.F.R. § 240.10b–5.

2. The fiduciary laws for the State of Michigan provide in pertinent part that:

   . . . Except with the written approval of the probate court, a fiduciary in his personal capacity shall not engage in any transaction whatsoever with the estate which he represents, nor shall he invest estate funds in any company, corporation or association with which he is affiliated, other than as a bondholder or minority stockholder. A fiduciary in his personal capacity shall not personally derive any profit from the purchase, sale or transfer of any property of said estate. The deposit of moneys by a fiduciary in a bank or trust company in which such fiduciary may be interested as an officer, director or stockholder, shall not constitute a violation of the provisions of this section.

   Mich.Comp.Laws § 704.37.

3. The Court reasoned that "as beneficiary, [plaintiff] was the person who was to be benefitted by the sale and thus she had the interests of a de facto seller." *James v. Gerber Products*, 483 F.2d 944, 948 (6th Cir. 1973).

Gerber Products possessed material information neither available to the public nor revealed to the trustee Bank prior to the purchase of its stock from the Gerber and McCarty Trusts. This undisclosed information related primarily to the increased earnings of Gerber during the two fiscal periods in which the sales of trust stock occurred.

Materiality is a factual issue that the district court properly submitted to the jury for determination. The Supreme Court in *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976), recently stated:

> The issue of materiality may be characterized as a mixed question of law and fact, involving as it does the application of a legal standard to particular sets of facts. . . . The determination requires delicate assessments of the inferences a "reasonable shareholder" would draw from a given set of facts and the significance of those inferences to him, and *these assessments are peculiarly ones for the trier of fact.*

426 U.S. at 450, 96 S.Ct. at 2132 (emphasis added). The jury below found that the undisclosed information at issue was not material within the meaning of the Securities Exchange Act. In appealing the district court's denial of a judgment notwithstanding the verdict, plaintiff now contends that "earnings reports are plainly within the meaning of the Act." Even assuming that plaintiff's contention is correct, the undisclosed information in the present case is not tantamount to official "earnings reports," as plaintiff suggests. The first sale of Gerber stock occurred in August, 1966, about the middle of the second quarter of Gerber's fiscal year. The second sale took place in May, 1968, about the middle of the first quarter of that year. The uncontradicted testimony of all the Gerber employees indicated that earnings figures of the company are not finalized until a month or so after the end of a business quarter. The undisclosed information in dispute, therefore, is comprised of interim earnings figures that circulated through Gerber in the normal course of its business. Such sales figures, projections, forecasts and the like only rise to the level of materiality when

they can be calculated with substantial certainty. *See Arber, supra*, 490 F.2d at 421; *Financial Industrial Fund v. McDonnell-Douglas Corp.*, 474 F.2d 514 (10th Cir. 1973). In light of the nature of the undisclosed information that was presented to the jury for its evaluation, the district court did not err in denying plaintiff's motion for a judgment notwithstanding the verdict.

**II**

■ Plaintiff charges that defendant Bank breached its fiduciary duty as the trustee of the Gerber and McCarty Trusts when it authorized sales of stock to the Gerber Products Company. In essence, plaintiff reasons that the existence of officers and directors common to the Bank and Gerber at the time of the sales amounted to a constructive fraud in violation of both the state fiduciary laws and 15 U.S.C. § 78j(b). We agree with the district judge that the final judgments of the Michigan probate court bar plaintiff's action on this claim.

■ The doctrine of res judicata is not discretionary in nature, but rather, is embodied in a congressional mandate that the courts must conscientiously follow.

> The . . . judicial proceedings of any court of any . . . State, Territory, or Possession . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738. The wisdom of this congressional mandate is apparent. If judgments are not deemed conclusive as to matters which are considered, the judicial system cannot effectively carry out its social function of dispute resolution. Moreover, if parties are allowed to raise the same matters in subsequent litigation, both the courts and the opposing parties will be burdened with unnecessary costs. These considerations have led the Supreme Court to conclude that it is no "longer tenable to afford a litigant more than one full and fair opportunity for judicial resolution of the same issue." *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402

U.S. 313, 328, 91 S.Ct. 1434, 1442, 28 L.Ed.2d 788 (1971).

■■■■ A review of the Michigan Probate Code reveals that the probate court hearings conducted in 1966 and 1968 afforded plaintiff a "full and fair opportunity" for resolution of her claim of fiduciary fraud. At the time the trustee accountings were filed, the Michigan probate court was vested with the jurisdiction to consider any alleged violations of state or federal laws committed by defendant Bank in the course of the Gerber stock sales. If a party in interest has a complaint with a trustee accounting, the party should object to the allowance of the accounting during the probate hearing. Mich.Comp.Laws § 704.39. The hearing is designed to adjudicate all claims relating to the complete range of trustee misconduct, and the allowance is intended to settle all rights of the parties in interest against the trustee. The Michigan Supreme Court articulated these principles in *Hall v. Grovier*, 25 Mich. 428, 436 (1872).

> The representative having rendered his account, the matter is open to such corrections as the truth requires. . . . The object of a settlement is not merely to ascertain what items ought to be placed on the debit side of the administrator's account, subject to evidence at a future proceeding that he ought not to have been charged therewith as between himself and the estate. Its scope is more comprehensive and complete.
>
> The end to be accomplished is to judicially liquidate and settle the affairs of his trust, and determine the rights of the estate as against him, and his rights as against the estate, and the proceeding involves an adjudication upon each item.

Further, the Michigan Probate Code provided plaintiff normal judicial channels in which to perfect an appeal from the rulings of the probate court. Mich.Comp.Laws § 701.36. Upon such appeal, the Michigan circuit court was empowered, if necessary, to join the issues of law and the questions of fact raised in the probate hearing and proceed to trial by jury. Mich.Comp.Laws § 701.42.[4]

■■■■ The mere fact that plaintiff did not raise her claim of fiduciary fraud at either of the probate hearings does not prevent the operation of the res judicata doctrine. When a single "demand or claim in controversy" is involved, as in the present case,[5] "a judgment estops not only as to every ground of recovery or defense actually presented in the action, but also as to every ground which might have been presented." *Cromwell v. County of Sac*, 94 U.S. 351, 353, 24 L.Ed. 681 (1876). This rule is applied with particular force when the litigant asserting the claim did not make any effort to pursue a remedy in the first proceeding. Plaintiff herein, although she had received proper notice of the probate hearings, failed to raise an objection to the accountings.

> The rule that a defendant's judgment acts as a bar to a second action on the same claim is based largely on the ground that fairness to the defendant, and sound judicial administration, require that at some point litigation over the particular controversy come to an end. These considerations may impose such a requirement even though the substantive issues have not been tried, especially if the plaintiff has failed to avail himself of opportunities to pursue his remedies in the first proceeding, or has deliberately flouted orders of the court.

*Restatement (Second) of Judgments*, § 48, Comment a, at 36 (Tent. Draft No. 1, 1973).

4. Mich.Comp.Laws §§ 701.36 and 701.42, though controlling in this case, were repealed effective January 1, 1971.

5. In recent years the courts have defined the term "claim" for res judicata purposes in an expansive manner. *See, e. g., Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 329, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). Accordingly, the revised Restatement of Judgments defines "claim" in the context of res judicata as "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Restatement (Second) of Judgments*, § 48, Comment a, at 36 (Tent. Draft No. 1, 1973). We find that the 1966 and 1968 sales of Gerber stock were connected transactions which gave rise to a single claim.

Likewise, the omission of the identity of the stock purchaser, Gerber Products, from the trustee accountings does not deprive the probate court allowances of their res judicata status. Michigan law states that an order of the probate court is res judicata as to each item contained in the allowance, unless the trustee has perpetrated an actual fraud or concealment in the filing of the accounting. Mich.Comp.Laws § 704.39. *See Grigg v. Hanna,* 283 Mich. 443, 278 N.W. 125 (1938). Obviously, not all omissions of fact constitute actual fraud. *See Thaw v. Detroit Co.,* 307 Mich. 6, 25, 11 N.W.2d 305 (1943). When a party contests a final judgment of the probate court on the ground of non-disclosure by the trustee, "the facts [of the] case must be considered in determining whether fraud exists." *Roberts v. Michigan Trust Company,* 273 Mich. 91, 115, 262 N.W. 744, 752 (1935). Although plaintiff's claim of fiduciary fraud may have been precipitated by the trustee's disclosure of the name of the stock purchaser, the record does not contain evidence of any intentional misconduct or actual fraud in the filing of the trustee accountings. Several important facts of the sales, including the amounts of the stock sold, the prices of the stock and the gains on the sales, were clearly detailed by defendant Bank in its accountings. Further, the identity of the purchaser of trust assets is customarily not disclosed in a probate accounting, particularly when the assets are sold at their market price.[6] We conclude, therefore, that the omission of the identity of the stock purchaser did not constitute fraud or concealment, and thus the final judgments of the Michigan probate court preclude plaintiff from raising her claim of fiduciary fraud in a collateral proceeding.[7]

The district court's denial of a judgment notwithstanding the verdict and dismissal of plaintiff's claim of fiduciary fraud are affirmed.

6. Plaintiff argues that the non-disclosure of the stock purchaser's identity in the probate accountings prevents the application of res judicata principles in the present case. Plaintiff's reliance on *Sinclair v. Manufacturers National Bank of Detroit,* 55 Mich.App. 530, 223 N.W.2d 60 (1974), and *Green v. Old Kent State Bank & Trust Co.,* 3 Mich.App. 654, 143 N.W.2d 581 (1966), however, is unpersuasive. In *Sinclair,* a probate court had approved the sale of certain stock by a trustee at $2.50 per share. In a subsequent discovery proceeding, it was learned that an offer had been made to the trustee, prior to the probate court approval, for the same stock at $3.50 per share. The court found that the non-disclosure of the $3.50 per share offer amounted to a fraud on the probate court. In *Green,* a trustee accounting had disclosed the fact of certain stock sales, but had not disclosed a direction in the will to retain the stock, or the adverse tax impact of the sales, or the less-than-market price received for the sales of stock to corporate insiders. The court determined that the non-disclosure constituted a "fraudulent concealment." The present case contains no evidence of the kind of intentional misconduct found in *Sinclair* and *Green.*

7. The district court reasoned that the federal securities laws do not guarantee plaintiff a federal forum at which to litigate her claim of violations under 15 U.S.C. § 78j(b) and Rule 10b–5.

> The Supreme Court having registered its concern and having refused to expand the application of 10(b)(5) under the circumstances in *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723 [95 S.Ct. 1917, 44 L.Ed.2d 539] (1975), prompts this Court to a reluctance to fashion a new remedy by way of collateral attack upon an order by a court of record in this state via a pendent process.

Plaintiff did not contest this reasoning on appeal.