141 Mich. App. 412 (1985)
367 N.W.2d 873
In re HUMPHREY ESTATE
HUMPHREY
v.
DETROIT BANK & TRUST COMPANY
Docket Nos. 53322, 75589, 75590.
Michigan Court of Appeals.
Decided March 18, 1985.
Paul M. Koch and Haig Avedisian, for appellant.
Evans & Luptak (by Gordon S. Gold), for appellees.
Before: DANHOF, C.J., and T.M. BURNS and R.H. BELL,[*] JJ.
PER CURIAM.
Three cases have been consolidated on appeal in this matter. In case No. 75590, plaintiff-appellant Florence Humphrey appeals as of right from a December 6, 1983, Oakland County Circuit Court order granting the appellees' motion for accelerated judgment. In case No. 75589, she appeals by leave granted from a decision of the Oakland County Circuit Court entered on July 22, 1983, affirming an order and opinion of the Oakland County Probate Court rendered on March 5, 1980. And in case No. 53322, she appeals as of right from the probate court's allowance of respondent-appellee Detroit Bank & Trust's second annual account and from the denial of her motions to set aside the account and for a rehearing. *417 Appellant contests the allowance of fiduciary fees, attorney fees and certain disbursements.
On August 5, 1955, Charles E. Humphrey established a revocable inter vivos trust (hereinafter Thirty Trust), which consisted primarily of stock in two businesses owned by Humphrey and his brother. Humphrey controlled the trust as trustee and his brother Howard and his Ohio attorney were co-trustees. Humphrey named himself as the life beneficiary, with his two sons, Charles E. Humphrey, Jr., and John N. Humphrey, as the remaindermen. Thirty-two days later Charles Humphrey brought an action for divorce against his then-wife Betty. On February 1, 1957, a decree of divorce was entered in Wayne County Circuit Court. On or about June 1, 1957, Charles Humphrey married his second wife, Florence Humphrey, the appellant in these cases.
In 1973, Charles Humphrey amended the Thirty Trust by naming Detroit Bank & Trust Company as successor trustee in the event of his death. He also executed a will naming appellant as the sole beneficiary under the will and designating the same bank as executor.
On December 22, 1976, Charles Humphrey died and Detroit Bank & Trust Company assumed its duties as both the executor of Mr. Humphrey's estate and trustee for the Thirty Trust. On May 23, 1978, the first annual account of the bank as executor and a petition for allowance were filed in probate court. The account did not include as estate assets the inter vivos trust set up by the deceased or three GMAC bearer notes, totalling $112,000. On May 30, 1978, appellant filed objections to the first annual account based upon alleged violation of the rule against perpetuities by the Thirty Trust. The objection stated that the trust was invalid and that the trust corpus should *418 be included as part of the estate assets. On June 27, 1978, the probate court conducted a hearing on the first account. At that time, Mrs. Humphrey's attorneys orally withdrew their objections. On July 13, 1978, an order was entered allowing the first account as stated.
After obtaining the services of her current counsel, Florence Humphrey filed a petition in the probate court to remove the bank as executor of the decedent's estate, to set aside the first annual account, and to hold the Thirty Trust invalid. She contended that the bank should be removed as executor based on a conflict kf interest in the bank's acting as executor of the estate and as trustee of the Thirty Trust. She requested the first annual account be set aside, again arguing that the three GMAC bearer notes should be included in the estate inventory, not as Thirty Trust assets.
Pursuant to the petition filed by Mrs. Humphrey, numerous hearings, including evidentiary hearings, and depositions were conducted concerning the request to remove the bank as executor of the decedent's estate. Moreover, the probate court incorporated depositions taken of the bank's trust officer, Martha Runnels, into the record. As one example of the alleged conflicts of interest, Mrs. Humphrey claimed that the executor should have sought to have the GMAC notes included in the estate assets. Martha Runnels testified that the GMAC notes were correctly included as trust assets because the notes were derived from prior trust notes that had been "rolled over" by Charles Humphrey on their expiration date. Mrs. Runnels' determination was concurred in by her supervisor, William Penner.
Another reason alleged for removal of the bank as executor was that the bank was not acting properly in its handling of an IRS audit of the *419 federal estate tax return. The IRS had indicated in March, 1978, that it was conducting an audit and informed the bank that it felt that the marital deduction on the estate return was overstated and therefore the tax submitted was deficient by approximately $30,000. The bank, however, felt that the IRS was wrong in its position and, instead of paying the alleged deficiency, asked its attorneys to contest it with the IRS.
At approximately the same time that the hearings on the petition for the bank's removal as executor were being conducted, the bank filed motions in the probate court contending that the allowance of the first account was res judicata as to the later-raised issues of the validity of the Thirty Trust and the lack of inclusion of the GMAC notes in the estate and that summary judgment should be granted against Mrs. Humphrey's claim that the Thirty Trust was invalid. After examining the briefs of both parties, Oakland County Probate Court Judge Barry M. Grant ruled in an opinion and order of March 5, 1980, that there were no conflicts of interest in the bank's acting as both executor of the estate and trustee of the Thirty Trust; that Mrs. Humphrey's pleadings failed to state a cause of action regarding the alleged invalidity of the Thirty Trust; that the allowance of the first account was res judicata as to the inclusion of the GMAC notes in the trust assets; and that the GMAC notes were properly included in the trust as trust assets. Appellant appealed the denial of her petition to this Court, but we dismised her appeal because the orders were not "final orders" and appealable as of right. In re Humphrey Estate, 107 Mich App 778; 309 NW2d 722 (1981).
Pursuant to our prior decision that the probate court order was not appealable to this Court as of *420 right, appellant appealed to the Oakland County Circuit Court, where, on August 12, 1983, the probate court's order was affirmed. Case No. 75589 is an appeal from the circuit court's affirmance of the probate court's order of March 5, 1980.
In the meantime, on December 18, 1978, appellant had filed an action in Oakland County Circuit Court, seeking to void the Thirty Trust. In her second amended complaint, appellant alleged that the trust was illusory in nature in that there was improper consideration, that the trust was a mere agency agreement, that it was testamentary in nature and did not comply with the statute of wills, and that it was a fraud on her to deprive her of her statutory share of her deceased husband's estate. She also alleged that, since the stated purpose of the trust was a desire of the grantor to preserve control of the family-owned businesses within the grantor's direct lineal descendents, the purpose of the trust came to an end because the grantor, Mr. Humphrey, sold the stock of the family-owned businesses. On February 20, 1979, defendants moved for accelerated judgment, pursuant to GCR 1963, 116.1(5), claiming that the allowance in the probate court of the first account of the executor of the decedent's estate, after objections thereto were withdrawn by Florence Humphrey, precluded her from contesting the validity of the Thirty Trust. After denial of this motion and several subsequent motions (to be discussed infra), the lower court eventually granted the motion for accelerated judgment on December 6, 1983. Appellant appeals as of right from the grant of accelerated judgment (No. 75590).
Meanwhile, the saga continued. On April 16, 1978, appellee (the bank) filed a petition for allowance of the second annual account, the subject of case No. 53322. Appellee requested approval for *421 payment of certain disbursements and fees, including the following:
(1) $400 to Farquharson & Pointon, Certified Public Accountants, for tax services;
(2) $1,500 to the Detroit Bank & Trust Company for services as executor;
(3) $16,117.50 to Evans & Luptak, attorneys for the estate, for legal services rendered; and
(4) $169.83 as reimbursement for disbursements made by Evans & Luptak.
The account also showed that appellee had paid a tax deficiency of $750.56 and $70.71 interest on that deficiency. Appellant filed objections to the second account, challenging the executor's refusal to list the GMAC bearer notes as inventory of the estate, the payment of the tax deficiency and interest, and the payment of all accountant fees, attorney fees, and executor fees.
On April 22, 1980, a hearing was held on appellee's petition. The only witness called to testify was William Penner, vice-president of the personal trust department of Detroit Bank & Trust Company. Following his testimony that he had assisted in the preparation of the second annual account and that it accurately stated the disbursements and receipts of the estate, appellee moved for allowance of the account. Appellant then cross-examined Penner extensively concerning appellant's objections to the account.
On May 13, 1980, the probate court entered an order approving the second annual account, but disallowed $200 in attorney fees and $145 in disbursements. Approval of a $400 accounting fee was held in abeyance pending submission of a copy of the invoice for the court's examination. The record on appeal contains a letter dated May 1, 1980, from appellee's attorney, including an attached *422 invoice for the accounting fee; however, it does not contain an order approving the $400 fee. On August 8, 1980, the probate court denied appellant's motion to set aside the second annual account and for rehearing and, on August 22, 1980, appellant filed her claim of appeal with this Court.
75589
Appellant first argues that appellee Detroit Bank & Trust should have been removed as executor of the decedent's estate for reasons of conflict of interest and wrongdoing. Appellant reasons that, as both executor of the estate and trustee of the Thirty Trust, there is no way by which the bank can avoid being involved in a conflict of interest. Appellant further asserts that the bank has breached its fiduciary duty as executor by unilaterally assigning the GMAC bearer notes to the trust account, by not seeking to have the Thirty Trust declared invalid (thereby recovering the assets of the trust for the decedent's estate), and by not seeking to have the law firm that drew up decedent's will reimburse the estate for any tax deficiencies that arose due to the ambiguity of the will itself.
Section 574 of the Revised Probate Code governs removal of a fiduciary. It states in pertinent part:
"If a fiduciary resides out of this state or, after due notice by the court, neglects to render his account and settle the estate according to law or to perform any order of the court or absconds or otherwise becomes unsuitable or incapable to discharge the trust, the court may remove the fiduciary by an order therefor following hearing * * *." MCL 700.574; MSA 27.5574.
It is appellant's contention that appellee bank is *423 "unsuitable or incapable" due to a conflict of interest.
As the permissive language of the statute suggests, the question of whether a fiduciary should be removed is one entrusted to the discretion of the probate court. Grand Trunk W R Co v Kaplansky, 270 Mich 135, 137; 258 NW 423 (1935); Breen v Kehoe, 142 Mich 58, 60; 105 NW 28 (1905). Accordingly, the lower court's decision will not be reversed absent an abuse of discretion.
In this case, the bank is both executor (now known as personal representative) of the decedent's estate and trustee of the Thirty Trust. In its opinion of March 5, 1980, the probate court resolved this issue as follows:
"In this case at hand, the bank did not commingle the trust assets with the probate estate assets; and, in fact, was diligent in separating both types of assets into different and distinct entities. * * *
"The petitioner alleges that the bank committed a wrongdoing by placing three (3) GMAC notes in the trust estate rather than in the probate estate; however, it is important to recognize that the aforesaid three (3) notes were not registered in the decedent's name and were found in the decedent's safe deposit box, which was registered in the name of the decedent's trust and business; thus, the said box was not registered at the time of the decedent's death in the decedent's name personally or individually. It is significant that the decedent chose not to register the notes in his name or place the same in an envelope with his name upon the said container nor to indicate in any manner that the notes were joint property, nor did he ever tell Florence Humphrey that the notes should go to her upon his death. She testified that she and her husband never discussed the notes or that type of business. Hence, there is no evidentiary basis to place the said three (3) notes in the decedent's probate estate; therefore, the allegation that the placing of the same in the trust is without merit as it pertains to wrongdoing. In fact, if *424 the bank placed the notes in the decedent's probate estate, that act would have constituted a negligent act upon the bank.
"In reviewing the testimony of the petitioner, it is significant to discover that she never testified that the notes, to the best of her knowledge, were in the decedent's own name. The petitioner testified as follows, which substantiates that the three (3) notes do not belong in the decedent's probate estate; Florence Humphrey testified that she did receive the inventory and that in response to the question: `Were the GMAC notes listed on the inventory of the probate estate?' She answered `no'. The widow testified that, as far as she knew, the GMAC notes `were not of the probate assets'. In addition, Florence Humphrey stated to this Court that she `never saw the particular notes before your (my) husband passed away nor did he ever discuss (the) notes with her before he passed away'.
"There was absolutely no proof shown in this matter that there was any wrongdoing on the part of the bank; and, at best, the petitioner was attempting to draw inferences, which were not substantiated by testimony or evidence; therefore, there are no grounds, such as any wrongdoing, to remove the Detroit Bank & Trust Company as the fiduciary; and,
"The petitioner's request to remove Detroit Bank & Trust as such is denied."
A trust accountant, Jack Farquharson, informed Martha Runnels that the GMAC notes were derived from prior trust notes that had been "rolled over" by Mr. Humphrey on their expiration date. Appellant herself knew of no reason why the notes should be treated as estate assets except that she thought they were to be used for a vacation. Given the above, we cannot say that the lower court abused its discretion in refusing to remove the bank as personal representative on the basis of the bearer notes. We find the lower court's conclusion to be supported by the evidence.
Appellant also alleges wrongdoing on the part of *425 appellee with respect to the Internal Revenue Service's finding of a tax deficiency and the failure to seek to have the Thirty Trust invalidated. Testimony at the hearings, however, made it clear that the bank was protesting the alleged tax deficiency found by the IRS.
With respect to appellant's assertion that the bank improperly failed to seek invalidation of the trust, the probate court stated:
"This court has considered all possible defects which might invalidate the turst [sic], including those relied upon by petitioner. First, it is important to analyze whether the grantor had the ability to create such a trust. There was no showing that, at any time, the grantor of said trust was not of sound and disposing mind and memory. All proofs consistently indicate that he was fully competent and that he was a successful businessman who understood the affect [sic] of creating such a trust.
"There was no evidence of fraud or duress in the creation of the trust. A person has the fundamental right to create a trust if they [sic] so desire, even to the dismay or hardship of their [sic] spouse.
"The said trust operated for over twenty (20) years. The petitioner has not proven that the trustee committed any wrongdoing. * * *
"* * * It is quite apparent that on the face of the trust, the said instrument is valid and properly constructed. The petitioner alleges that the trust should terminate upon the diminution of assets. There is no provision in the trust which would indicate that the trust become void or dissolved because assets are removed or reduced. The Thirty Trust was not illusory nor invalid; the grantor created this trust before he married the petitioner herein, Florence Humphrey, and he had many years and many opportunities to modify, revoke, or change the trust at any time to provide for Florence Humphrey. Obviously, he chose not to do so, which was certainly his fundamental right to dispose of his property as he saw fit.
*426 "The trust does not violate the rule against perpetuities. The trust does not contain any provision which terminates the instrument during the decedent's life-time and certainly he was cognizant of the trust provisions and the operation of the same since he continually received income during his life from the trust, thus indicating he was certainly aware of the said instrument."
Again, we find that this is supported by the evidence and that there is nothing to indicate that the trust was invalid. Accordingly, we cannot say that the lower court abused its discretion in refusing to remove the bank as personal representative on the basis of wrongfully failing to contest the validity of the trust. This claim of error does not require reversal.
Nevertheless, while we believe that no actual conflict of interest existed to the extent that it made the bank "unsuitable or incapable" of performing its duties, and that no wrongdoing occurred because the bank did challenge the IRS and there was little doubt that the bearer notes belonged to the trust, not the estate, we direct the bank at this time to make an election between the trust and the estate. Inasmuch as all of the assets involved belong to either the trust or the estate and any fees incurred must be assessed against either one or the other, we believe that the bank's dual capacity must inevitably lead to an actual conflict. Thus, even though we find that the court's resolution of the alleged instances of wrongdoing by the bank does not required reversal, this dual capacity should not persist. We find little merit to the bank's argument that appellant's remedy is to file a suit for damages against the executor. She may have that remedy as well, but it does not preclude removal of the bank as executor. See *427 § 574 of the Revised Probate Code, reproduced above.
Next, appellant argues that the executor's motion for summary judgment was not made pursuant to any probate court rule, but was based on the general court rules, which do not govern probate proceedings. The probate court's opinion of March 5, 1980, in addition to refusing to remove the bank as executor of the estate, also found that the Thirty Trust was valid and that appellant was barred from raising the issue of the GMAC notes by the doctrine of res judicata.
We initially note that appellant's contention concerning the probate court's authority to grant accelerated and summary judgment has already been decided adversely to her position. This same issue was before this Court in In re Easterbrook Estate, 114 Mich App 739, 747; 319 NW2d 655 (1982). There, we held that a probate court can summarily dismiss a claim if there is an obvious statutory disability and it cannot be overcome. This includes the power to "grant motions for accelerated and summary judgments in accordance with GCR 1963, 116 and 117 [because such] is an inherent power of that court that is necessarily implied by the nature of our judicial system".
Appellant also argues that summary judgment was improperly granted because a genuine dispute of material fact existed. We note, however, that a judgment granted for the reason of res judicata should be rendered through accelerated judgment, not summary judgment. Thus, if the probate court properly found that the doctrine of res judicata applied, accelerated judgment would be proper, GCR 1963, 116.1(5), and we may treat the probate court's order as one granting accelerated judgment. Robinson v Emmet County Road Comm, 72 Mich App 623, 637; 251 NW2d 90 (1976). Thus, *428 whether such was properly granted depends upon whether the doctrine of res judicata applies to the instant case. We first turn to the ruling below as it relates to the first annual account and the GMAC bearer notes.
Appellant disputes the application of res judicata because, according to her, the first annual account filed by appellee as executor did not disclose the disposition of the GMAC notes, so that she is not barred from seeking recovery of the notes by her failure to object to the account. We disagree.
Annual accounts by a fiduciary are required by MCL 700.563; MSA 27.5563. The finality of an annual account is dealt with in subsection 4 of MCL 700.564; MSA 27.5564, which states:
"Subject to the right of appeal, and except in case of fraudulent concealment or fraudulent misrepresentation on the part of the fiduciary, the order of the court allowing an account of a fiduciary shall be final and conclusive against all persons in any way interested therein who are legally competent at the date of the order and against all other persons who are or may become interested therein although legally incapacitated to act in their own behalf if the persons designated by law or supreme court rule are eligible to be served on their behalf, assented to the account, have been heard thereon, or given notice of hearing thereon, as provided in this act." (Emphasis added.)
Appellant relies upon Green v Old Kent Bank & Trust Co, 3 Mich App 654; 143 NW2d 581 (1966), for the proposition that res judicata may not be applied here to matters not actually addressed in the prior proceeding on the first annual account. Green, supra, dealt with an estate accounting where the defendants attempted to raise the bar of res judicata in a subsequent proceeding to construe *429 provisions of the underlying will. This is based upon MacKenzie v Union Guardian Trust Co, 262 Mich 563; 247 NW 914 (1933), which held that a probate court's order allowing the accounts did not constitute a construction of the will. Here, however, the issue sought to be barred relates directly to the account, and, therefore, is clearly distinguishable from Green, supra, and MacKenzie, supra. This case is more closely analogous to McDannel v Black, 270 Mich 305, 310-313; 259 NW 40 (1935), in which the Supreme Court held:
"The general principle of res judicata applies to the orders of the probate court on final accounts of executors and administrators. * * *

* * *
"A settled account is conclusive between the parties unless some fraud, mistake, omission or inaccuracy is shown (Hager v. Thomson, 1 Black [66 U.S.], 80, and Eccard v Brush, 48 Mich.3); and if the party seeking relief was aware of the facts at the time of the settlement of the account, then the subsequently sought relief will be refused. * * *

* * *
"Res judicata applies not only to issues which were determined on their merits, but also to matters which the parties had an opportunity to present for adjudication on the merits. * * *

* * *
"To hold, as we do, that the judicial settlement of an executor's account bars the later assertion of claims for compensation for extraordinary services when the executor is able to show no justifiable excuse of the original omission of the item, will, we hope, help preserve that degree of conclusiveness of the adjudication of final accounts which is necessary for the prompt settlement of estates and yet not unreasonably restrict the presentation of just claims by executors."
Accordingly, where, as here, the matter is one *430 concerning items that should have been included in the accounting, a prior settling of the account will bar such later action. MacKenzie, supra, and Green, supra, do not require a different result. They simply observe that the settling of an account may not be a bar to construction of the provisions of the underlying instrument. This is in keeping with the purpose of the accounting.
In this case, appellant's original objection to the first annual account, filed May 25, 1978, made no mention of the GMAC notes, but was based on the alleged invalidity of the Thirty Trust. That objection was withdrawn and she did not object to the GMAC notes not being included in the annual account until her amended petition of February 20, 1979, eight months after the order allowing the account was entered. It is undisputed that appellant was aware of the existence of the GMAC notes. She was present when they were discovered in her late husband's safety deposit box. She also testified that she knew the GMAC notes were not considered part of the decedent's estate and she expressed no dissatisfaction with the absence of the GMAC notes from either the probate inventory or the annual account. With any diligence whatsoever, the absence of the GMAC notes from the first annual account could have been contested in a timely fashion. It was not. We hold that the probate court (and the circuit court in upholding the probate court's ruling) properly applied the doctrine of res judicata.
In his order and opinion of March 5, 1980, Judge Grant did not find that the annual account was res judicata as to the validity of the Thirty Trust. Instead, he decided the issue of the validity of the trust on the merits in addressing appellant's claims of wrongdoing, and thus whether the first *431 annual account was res judicata as to the validity of the Thirty Trust will not be addressed.
Appellant also suggests that the probate court was without jurisdiction to determine the validity of the Thirty Trust, and, therefore, res judicata may not be applied with respect to the trust because no lawful judgment entered. This is the essential argument raised in case No. 75590, to which we now turn.
75590
Appellant argues that the circuit court erred in granting appellees' "fourth" motion for accelerated judgment. She asserts that the court rules allow only one motion for accelerated judgment to each party and that the doctrine of res judicata was erroneously applied inasmuch as the probate court had no jurisdiction to determine the validity of the Thirty Trust so that its opinion cannot be res judicata to the claim. She also suggests that the parties were not the same in both actions.
On December 18, 1978, appellant filed suit in Oakland County Circuit Court, seeking to invalidate the Thirty Trust. On February 7, 1979, she amended her complaint. On February 20, 1979, the defendant bank and remaindermen moved for accelerated judgment pursuant to GCR 1963, 116.1(5), claiming that the allowance of the first account of the executor of the decedent's estate in the probate court precluded appellant from contesting the validity of the Thirty Trust. This motion was denied without prejudice. Thereafter, on May 30, 1979, appellant filed her second amended petition in Oakland County Probate Court, requesting that the probate court declare the Thirty Trust invalid. As a result, on December 4, 1979, the bank and remaindermen filed a second motion *432 for accelerated judgment pursuant to GCR 116.1(4), asking that the circuit court action be dismissed because of the petition pending in the probate court. This motion for accelerated judgment was denied as premature.
After Judge Grant of the Oakland County Probate Court rendered his opinion and order of March 5, 1980, granting the trustee bank's motion for summary judgment, the defendant bank and remaindermen filed the third motion for accelerated judgment based upon GCR 1963, 116.1(5). The motion alleged that Judge Grant's decision upholding the validity of the Thirty Trust was res judicata as to appellant's circuit court action seeking to have the trust declared invalid. On May 21, 1980, the circuit court ruled that it would not grant defendants' motion at that time but would hold everything in abeyance until this Court ruled on the appeal from the order of March 5, 1980. After this Court decided that appellant's proper avenue of appeal was in the Oakland County Circuit Court and the circuit court affirmed the probate court, the bank and the remaindermen renewed their motion. After a hearing, the circuit court granted their motion for accelerated judgment on December 6, 1983.
Appellant correctly notes that GCR 1963, 116.2 limits a party to one motion for accelerated judgment. However, the motion for accelerated judgment which was granted by the circuit court in the present case was based on a defense which had previously been unavailable to defendants, namely, res judicata. They raised the defense within a reasonable time after it became available to them and renewed the motion after the decision on appeal to the circuit court upholding the validity of the Thirty Trust.
GCR 1963, 13 states as follows:
*433 "These rules are to be construed to secure the just, speedy, and inexpensive determination of every action so as to avoid the consequences of any error or defect in the proceedings which does not affect the substantial rights of the parties."
To disallow the motion would not secure "a just" determination, nor would allowing it affect the substantial rights of the parties.
Moreover, the purpose of the one-motion rule is to "prevent the dilatory practice of postponing an answer on the merits by raising special defenses by motions seriatim". 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), 1984 Supp, p 114. The rule is also directed at precluding the moving party "from asserting such omitted defenses by motion", i.e., it precludes raising new defenses omitted in the first motion for accelerated judgment. 1 Honigman & Hawkins, Michigan Court Rules Annotated, (2d ed), p 324. Here, an omitted defense is not being asserted. The same defense was raised each time. And there is no question of delaying tactics. Finally, defendants' motions were denied without prejudice, held to be premature and held in abeyance, respectively, so that this was not a "fourth motion" in the true sense. For all these reasons, we find no error. Appellant was not prejudiced by a "fourth" filing.
Appellant next contends that res judicata was erroneously applied because the parties to the two actions are not the same. In the action to invalidate the Thirty Trust in probate court the respondent was Detroit Bank & Trust, as executor of the estate of Charles E. Humphrey, deceased. In her circuit court suit to have the trust declared invalid, Mrs. Humphrey named Detroit Bank & Trust as successor trustee of the Thirty Trust, as well as Charles E. Humphrey, Jr., and John N. *434 Humphrey, beneficiaries and remaindermen of the Thirty Trust. However, the parties need only be substantially identical in order for res judicata to apply; that is, it applies to the same parties or their privies. Braxton v Litchalk, 55 Mich App 708, 717-718; 223 NW2d 316 (1974). Although in the two proceedings Detroit Bank & Trust was named in its two different fiduciary capacities, we are of the opinion that the parties were substantially identical in both the probate court and the circuit court proceedings to invalidate the Thirty Trust. And, it is beyond dispute that the same claim was raised in both proceedings.
Appellant's final claim of error is that the probate court is without jurisdiction to decide the validity of the Thirty Trust. She argues that the former probate code governs the instant action and that it contained no provision granting jurisdiction to decide issues on the legality or validity of an inter vivos trust. She states that the Legislature granted such authority only by adoption of the Revised Probate Code, effective July 1, 1979, but that prior to this time no such authority existed.
The first question to be decided is whether the former probate court or the Revised Probate Code is applicable. Section 992(a) of the Revised Probate Code provides as follows:
"This act applies to any proceedings in court then pending or thereafter commenced regardless of the time of the death of decedent except to the extent that in the opinion of the court the former procedure should be made applicable in a particular case in the interest of justice or because of infeasibility of application of the procedure of this act." MCL 700.992(a); MSA 27.5992(a).
Although the first annual account was allowed on June 27, 1978, no court made a decision about *435 the validity of the Thirty Trust until the probate court handed down its decision of March 5, 1980. There are only limited exceptions to the rule that the Revised Probate Code applies to pending proceedings as of the effective date. In re Cunningham Estate, 131 Mich App 251, 253; 345 NW2d 681 (1983). Because appellant's probate court proceeding which resulted in the opinion and order of March 5, 1980, was pending on the effective date of the Revised Probate Code, and that opinion addressed the validity of the trust, the Revised Probate Code was applicable.
Moreover, Const 1963, art 6, § 15, provides that the probate court's jurisdiction, powers, and duties shall be provided by law. The jurisdiction and power of the probate court is set forth in MCL 600.841; MSA 27A.841 as follows:
"(a) As conferred upon it under the revised probate code.
"(b) As conferred upon it under chapters 10, 11 and 12a of Act No. 288 of the Public Acts of 1939, as amended, being sections 710.21 to 712a.28 of the Michigan Compiled Laws.
"(c) As conferred upon it under Act No. 258 of the Public Acts of 1974, as amended, being sections 330.1001 to 330.2106 of the Michigan Compiled Laws.
"(d) As conferred upon it under this act.
"(e) As conferred upon it pursuant to any other law or compact."
The Revised Probate Code, MCL 700.21; MSA 27.5021, vests the probate court with exclusive jurisdiction of:
"(c) Proceedings concerning the internal affairs of trusts including proceedings concerning the administration and distribution of trusts and the declaration of rights or the determination of other matters involving *436 trustees and beneficiaries of trusts, including proceedings to:
"(i) Appoint or remove a trustee.
"(ii) Review the fees of a trustee.
"(iii) Review and settle interim or final accounts.
"(iv) Ascertain beneficiaries.
"(v) Determine any question arising in the administration or distribution of any trust, including questions of construction of wills and trust; instruct trustees, and determine relative thereto the existence or nonexistence of an immunity, power, privilege, duty, or right." (Emphasis added.)
Finally, MCL 600.847; MSA 27A.847, a complementary amendment to the Revised Judicature Act, provides that the probate court has "the same powers as the circuit court to hear and determine any matter and make any proper orders to fully effectuate the probate court's jurisdiction and decisions". This, in conjunction with the probate court's jurisdiction over any matter, including proceedings to construe a trust, which arises in the distribution of the trust, confers jurisdiction on the probate court to invalidate a trust. Accordingly, we hold that the probate court had jurisdiction over appellant's claim that the trust was invalid and, therefore, res judicata was properly applied on the basis of the probate court's order of March 5, 1980.
No. 53322
This appeal involves the second annual account and the allowance of certain fees. Appellant first argues that appellee introduced no evidence at the hearing in support of its claim for the $1,500 fiduciary fee and that the probate court refused to allow appellant to examine the appellee's witness concerning the issues of fraud, negligence, and bad *437 faith, precluding the appellant from demonstrating that the executor was not acting in the best interest of the probate estate and therefore was not entitled to the fee.
Under MCL 700.541; MSA 27.5541 (formerly MCL 704.33; MSA 27.3178[284]), a fiduciary is entitled to compensation for services and expenses. However, a fiduciary fee can be charged against an estate only where the services rendered were on behalf of and beneficial to the estate. In re Baldwin's Estate, 311 Mich 288, 314; 18 NW2d 827 (1945).
At the hearing, appellant attempted to show that appellee was not acting in the best interest of the estate during the time period covered by the second annual account. Appellant pointed to the appellee's opposition to her petition to have the Thirty Trust declared invalid and certain assets, such as the GMAC notes, included in the estate inventory. Appellant also attempted to show that appellee, because of its position as trustee of the Thirty Trust, favored the interest of the trust beneficiaries to the detriment of the appellant's interest.
The probate court limited appellant's examination on these matters, ruling that these issues had been resolved in the order of March 5, 1980, where it determined that there was no conflict of interest, the GMAC notes were assets of the Thirty Trust, and that the trust was valid. We agree with appellee that appellant should not be allowed to relitigate the issues determined by the order of March 5, 1980. And appellant's objections to the fiduciary fee were based upon similar allegations, i.e., that the executor acted against appellant's interest by "consulting with an adverse interest". It was previously held that the GMAC bearer notes were not a proper asset of the estate and *438 that there was no actual conflict of interest. Appellant offered no further proof in opposition to the $1,500 fiduciary fee, aside from the claim that the fee was improper because of a conflict of interest.
Additionally, the former probate code which was in effect at the time the second annual account was submitted, MCL 704.33; MSA 27.3178(284), lends guidance. For an estate this size, the bank's commission would have been set at over $4,000. Under these circumstances, in conjunction with the court's finding that there was no conflict of interest and that the bank acted properly and not adversely to the estate, we cannot say that the lower court erred in allowing the fiduciary fee of $1,500 or in disallowing testimony on matters already determined. The court was "fully informed of the nature and extent of the services rendered". In re Estate of Weaver, 119 Mich App 796, 800; 327 NW2d 366 (1982). We cannot say that a fee of $1,500 was not justified.
Next, appellant asserts that the probate court's approval of the $16,117.50 in attorney fees and $400 in accountant fees, and payment of the $750 federal income tax deficiency, was an abuse of discretion and should be reversed because these fees were not incurred in the best interests of the estate. First, appellant contends that a portion of the attorney fee ($906.25), the accountant fee, and the income tax deficiency were incurred because of the negligence of appellee, its counsel, and its accountants, and that, second, the remaining portion of the attorney fee was incurred by appellee while counsel was representing appellee's interest as trustee of the Thirty Trust or representing the Humphrey brothers. Appellant concludes that appellee did not sustain its burden of proving that these fees were incurred in the best interest of the estate by properly documenting the fees.
*439 The probate court is authorized to approve reasonable compensation for services rendered by counsel for the estate. MCL 700.543; MSA 27.5543. However, attorney fees may be charged against the estate only where the services rendered were on behalf of and beneficial to the estate, Baldwin's Estate, surpa. In order to ascertain the reasonable value of services to an estate, the court should consider the time spent, the amount involved, the character of the services rendered, the skill and experience called for in the performance of the work, and the results obtained. Becht v Miller, 279 Mich 629, 640; 273 NW 294 (1937); Weaver, supra. The standard of review applied by this Court to a probate court's determination as to the amount of attorney fees to be awarded is whether the court abused its discretion. Weaver, supra; In re L'Esperance Estate, 131 Mich App 496, 501; 346 NW2d 578 (1984).
Appellant's first contention is that the probate court abused its discretion by approving the payment of the 1976 tax deficiency and accountant and attorney fees resulting from the 1976 tax audit. We disagree. Appellee sustained its burden of proving that there was no negligence in the preparation of the tax returns. Appellant was also given the opportunity to call into court the attorney who performed these services and cross-examine him regarding the work done. This offer was declined at the hearing. Thus, the taxes, the accountant fees for the audit, and the attorney fees were properly charged against the estate. Baldwin's Estate, supra, pp 301, 312-314.
Appellant also argues that the claim for the entire attorney fee of $16,117.50 was not properly documented. The original statement attached to the second account does not justify the allowance of the attorney fees. The statement contains no *440 designation of the time spent in performing the claimed services, nor description of the subject matter, and no designation of who performed the services. Thus, the statements submitted by appellee did not give the probate court any means of determining the reasonableness of the time spent in performing the various legal services to the estate. See In re Kiebler Estate, 131 Mich App 441; 345 NW2d 713 (1984). However, at the hearing, appellee submitted a computer printout which it was directed to turn over to appellant. Furthermore, the probate judge noted on the record the time spent, the subject matter and the person performing the services indicated on the computer printout. While we do not have benefit of the computer printout, the lower court found the fees to be reasonable, billed at about $38 per hour. Information supporting the proper factors for consideration was given the court. We cannot say that the probate court abused its discretion. See Weaver, supra, pp 798-799.
Appellant also contends, however, that the evidence shows that much of the attorney fee was for services rendered to the appellee in its capacity as trustee of the Thirty Trust and to the Humphrey brothers. The parties agreed that appellee would submit to appellant whatever documents were desired regarding this matter. The record does not indicate whether anything else was requested or submitted. Accordingly, we cannot review this claim. Additionally, the parties agreed that attorney fees in the amount of $200 and disbursements in the amount of $145 relating to this claim would be disallowed. Since appellant stated agreement on the record, we find no error.
Appellant's final contention, that the estate should not be charged with the attorney fees incurred *441 for the defense of appellant's petition to have appellee removed as executor, the GMAC notes included in the estate inventory, and the Thirty Trust declared invalid, has some merit. The probate court ruled that appellee had a right to defend itself and, thus, the attorney fees were properly chargeable against the estate. We agree. Since no conflict of interest or wrongdoing was proven by appellant, the attorney fees incurred by appellee to defend its position as executor are properly chargeable against the estate. Baldwin's Estate, supra, p 314. However, that portion of the attorney fees which was incurred by appellee in defending appellant's petition seeking inclusion of the GMAC notes in the estate and a declaration that the Thirty Trust was invalid are not properly chargeable against the estate, since they were not beneficial to the estate. The services did not increase or preserve the assets of the estate but, in fact, were detrimental to the estate and benefited the Thirty Trust beneficiaries. Therefore, that portion of the attorney fees was not properly chargeable against the estate.[1]In re Brack Estate, 121 Mich App 585, 591; 329 NW2d 432 (1982).
Affirmed in part; reversed in part.
NOTES
[*] Circuit judge, sitting on the Court of Appeals by assignment.
[1] We note that while the attorney fees are not properly chargeable against the estate, this does not vitiate the validity of the fiduciary fees previously discussed. The fiduciary fee was ostensibly reasonable and involved other matters of management of the estate. A fiduciary is entitled to a "just and reasonable" fee, see § 541, whereas attorney fees must be based on "necessary legal services in behalf of the estate". See § 543. Appellee's fees incurred in defense of the petition seeking inclusion of the GMAC notes in the estate and a declaration that the Thirty Trust was invalid were not as a result of "necessary legal services in behalf of the estate". Nor does disallowing this portion of the attorney fee indicate that there was a conflict of interest. Indeed, by disallowing such fees, we specifically avoid any conflict and resultant prejudice to appellant. This result merely confirms the propriety of the bank's actions in determining that the GMAC notes were not estate assets and that the trust was valid, but recognizes that once these valid determinations were challenged, defense of such challenge was undertaken on behalf of the trust.