## *In re* ADAMS ESTATE

Docket No. 236421. Submitted June 4, 2003, at Lansing. Decided June 24, 2003, at 9:10 A.M.

Mary C. Adams, a personal representative of the estate of George C. Adams and a beneficiary of the decedent's trust, brought a motion in the Washtenaw County Probate Court to compel Bank One, trustee of the trust, to provide a final accounting of the trust and to compel Bank One to begin distributing assets to the trust beneficiaries. The probate court ordered that an arbitrator resolve several issues arising from the filing of the motion, including the reasonableness of Bank One's fees for managing the trust assets. The arbitrator reduced Bank One's administrative fees by $118,510, concluding that the fees were unreasonable. The probate court, John N. Kirkendall, J., entered an order reflecting the arbitrator's opinion, and ordered that Bank One take no further actions giving rise to additional fees without the written approval of the beneficiaries, with the exception of providing a final accounting of the estate within ten days of the order. Adams thereafter filed a petition and order to show cause as a result of Bank One's failure to timely file a final accounting. Subsequently, Bank One filed its final accounting, and Jeff Adams, Mary's brother and a trust beneficiary, filed objections to the accounting on the basis that Bank One charged fees for services without approval of the beneficiaries and did not timely file the accounting pursuant to the court's order. After a hearing and additional briefing, the court rejected Bank One's final accounting and request for fees rendered in preparing the accounting, and ordered Bank One to pay Mary and Jeff Adams' actual attorney fees and costs incurred in litigating the final accounting. Bank One filed a motion for reconsideration, which was denied after additional briefing by the parties. Bank One appealed.

The Court of Appeals *held*:

1. Bank One's argument that it was denied due process of law because the probate court's summary rulings deprived it of its rights without a hearing is meritless. At the least, due process requires the court to offer to hold a hearing before it deprives a litigant of its property interest, and to provide notice of the hearing to the litigant. Here, the court held a hearing with regard to Bank

One's final accounting and the Adamses' objections to the accounting. The court further permitted the parties to brief their respective positions on this issue, and also allowed the parties the opportunity to brief the issues on Bank One's motion for reconsideration. Under these circumstances, Bank One was not denied due process of law.

2. The objections to the final accounting were sufficiently specific in that Jeff Adams asserted that all the fees Bank One charged the trust in connection with the final accounting were improper because Bank One did not timely file the final accounting pursuant to the probate court's order, and because the charges were not approved by the beneficiaries. These specific objections amounted to a good reason to disallow the fees, and the objections were proper.

3. With regard to the probate court's award of attorney fees and costs, attorney fees are not ordinarily recoverable unless a statute, court rule, or common-law exception provides the contrary. Moreover, it is improper to award attorney fees on general equitable principles. In this case, the record does not reveal the basis on which the probate court awarded attorney fees. The award must be vacated and the matter remanded to the probate court to explain the basis of its award of attorney fees.

Affirmed in part, vacated in part, and remanded for further proceedings.

O'CONNELL, J., concurring in part and dissenting in part, stated that he agrees with the majority opinion with the exception that he would affirm the probate court's award of attorney fees and costs on the basis that the court's award was supported by Bank One's violation of its duties as trustee and its violation of the order of the probate court, but would remand for the imposition of actual appellate costs and attorney fees.

*Soble & Rowe, LLP* (by *Jonathan D. Rowe* and *Matthew E. Krichbaum*), for the petitioner.

*Nemes & Anderson, P.C.* (by *Thomas C. Nemes*), for the respondent.

Before: FITZGERALD, P.J., and HOEKSTRA and O'CONNELL, JJ.

FITZGERALD, P.J. Petitioner Bank One appeals as of right a probate court order rejecting petitioner's final

accounting as trustee of the George Adams trust. Petitioner also challenges the probate court order requiring petitioner to pay the trust beneficiaries' attorney fees. We affirm part, vacate in part, and remand.

George Adams died in 1994 and his assets were placed in a trust previously established by Adams. Adams' three children—Mary, William, and Jeff Adams—were the personal representatives of the estate and the trust beneficiaries. Petitioner became trustee of Adams' trust on May 31, 1995. The beneficiaries became dissatisfied with petitioner's performance as trustee, and respondent Mary Adams filed a motion to compel petitioner to provide a final accounting of the trust and to compel petitioner to begin distributing assets to the trust beneficiaries.

The motion precipitated a host of issues surrounding petitioner's management of the trust assets and, on December 2, 1999, the probate court ordered that an arbitrator resolve those issues. Among the issues resolved was the reasonableness of petitioner's fees for managing the trust assets. The arbitrator ultimately reduced the administrative fees by $118,510. On August 8, 2000, the probate court entered an order reflecting the arbitrator's opinion. Pertinent to the issues presented on appeal, the probate court ordered that

> [petitioner] . . . shall take no further actions giving rise to additional fees or expenses to be charged against the beneficiaries [of] the Estate, Trust and Voting Trusts without first receiving written approval of the beneficiaries, with the exception that within ten (10) days of the date of this Order and Judgment that [petitioner] file a final account as fiduciary for approval by the beneficiaries and the Court as to all matters involving the Estate, Trust and Voting Trusts.

In November 2000, Mary Adams filed a petition and order to show cause as a result of petitioner's failure to comply with the time provisions of the August 8, 2000, order. On December 5, 2000, petitioner filed its "Second and Final Accounting." Jeff Adams filed objections to the accounting.

On February 8, 2001, the probate court held a hearing regarding petitioner's final accounting and respondent's objections thereto. Petitioner requested that the court receive the final accounting and permit petitioner to charge the beneficiaries fees for services rendered in preparing the final accounting. Respondent objected on the grounds that petitioner charged fees for services rendered without the approval of the beneficiaries and did not file the accounting in compliance with the court's order. At the conclusion of the hearing, the court permitted discovery and requested proposed orders from each of the parties. The parties filed proposed orders and briefs with supporting evidence in support of the proposed orders.

In a June 13, 2001, order, the probate court denied petitioner's final accounting and ordered petitioner to pay respondent's and Jeff Adams' "actual attorney fees and costs" incurred in litigating petitioner's final accounting. Petitioner filed a motion for reconsideration, and the court requested that the parties brief the issues raised in the motion. The motion for reconsideration was denied.

Petitioner first contends that it was denied due process of law because the "summary rulings" of the court deprived it of its rights without a hearing. We disagree.

The federal and state constitutions provide citizens with certain due-process rights. The essence of due

process is "fundamental fairness." *Lassiter v Dep't of Social Services of Durham Co*, 452 US 18, 24; 101 S Ct 2153; 68 L Ed 2d 640 (1981). Whether the judicial proceedings were fundamentally fair requires an inspection of the particular facts of the case because due process " 'negates any concept of inflexible procedures universally applicable to every imaginable situation.' " *Bd of Curators of Univ of Missouri v Horowitz*, 435 US 78, 86; 98 S Ct 948; 55 L Ed 2d 124 (1978), quoting *Cafeteria Workers v McElroy*, 367 US 886, 895; 81 S Ct 1743; 6 L Ed 2d 1230 (1961).

At the very least, due process requires the court (1) to offer to hold a hearing before it deprives the litigant of a property interest and (2) to provide notice of the hearing to the litigant. In other words, "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews v Eldridge*, 424 US 319, 333; 96 S Ct 893; 47 L Ed 2d 18 (1976) (citation omitted).

Here, the court held a hearing with regard to petitioner's final accounting and respondent's objections to the accounting. The court then permitted the parties to brief their respective positions with regard to the accounting and to submit proposed orders. In an order rejecting the final accounting, the court ordered petitioner to show cause why the "compilations and summary of fees paid . . . shall not be held to be true and accurate." The court also gave petitioner another opportunity to brief the issues raised in petitioner's motion to reconsider. Under these circumstances, the court complied with all due-process requirements by giving petitioner full and ample opportunity to present its position to the court by hearings and by briefs.

Petitioner also argues that the probate court erred by rejecting petitioner's proposed order without first determining that petitioner's final accounting was factually inaccurate. However, by accepting respondent's accounting and rejecting petitioner's accounting, the court implicitly found that petitioner's accounting was factually inaccurate. Further, the parties were given the opportunity to submit briefs and evidence in support of their respective positions before the court issued its order, and the show cause order permitted petitioner an opportunity to demonstrate any inaccuracies in respondent's accounting.

Petitioner contends that the beneficiaries did not properly object to petitioner's final accounting. It argues that the beneficiaries were required to specifically object to petitioner's payments to third parties for professional services rendered in administration of the trust during the period of the final accounting. Specifically, petitioner contends that MCL 700.7205 required that the beneficiaries file a petition and demonstrate "some reason" why the fees are not proper. In addition, petitioner argues that *Mann v Day*, 199 Mich 88; 165 NW 643 (1917), requires (1) that any objection to a trustee's accounting be specific and (2) that the beneficiary offer "good reason" to disallow certain fees.

MCL 700.7205 provides in relevant part:

> On petition of an interested person, . . . the court may review the propriety of employment of a person by a trustee including an attorney, auditor, . . . or other specialized agent or assistant, and the reasonableness of the compensation of a person so employed and the reasonableness of the compensation determined by the trustee for the trustee's own services.

Here, Jeff Adams, a clearly interested person, filed an objection to petitioner's final accounting, asserting that *all* the fees that petitioner charged the trust in connection with the final accounting were improper because petitioner did not timely file the final accounting pursuant to the August 8, 2000, probate court order and because the charges were not approved by the beneficiaries as required by the order. The probate court concluded that any fees charged in violation of the August 8, 2000, court order were not reasonable, and we agree with this conclusion.

Concerning the specificity and propriety of the beneficiaries' objections to petitioner's payments to third-party professionals in connection with the final accounting, we find that the beneficiaries' objections were specific and provided good reason to disallow the payments. First, Jeff Adams' objection was specific because he clearly argued that the fees violated the August 8, 2000, court order. Second, as stated above, fees charged in violation of a court order amount to a "good reason" to disallow the fees. Thus, the beneficiaries' objections were proper.

Petitioner next contends that the probate court erred by awarding respondents "actual attorney fees and costs incurred . . . in the within proceedings as to the Objections to the Second and final Account." A probate court's award of attorney fees is reviewed for an abuse of discretion. See *In re Humphrey Estate*, 141 Mich App 412, 439; 367 NW2d 873 (1985), citing *In re Estate of Weaver*, 119 Mich App 796, 798-799; 327 NW2d 366 (1982).

"[A]ttorney fees are not ordinarily recoverable unless a statute, court rule, or common-law exception

provides the contrary." *Nemeth v Abonmarche Dev, Inc*, 457 Mich 16, 37-38; 576 NW2d 641 (1998). Here, a review of the record does not reveal the authority under which the probate court awarded respondents their actual attorney fees. What can be gleaned from the record, at most, is respondent's and Adams' argument that they were entitled to attorney fees on general equitable principles. However, it is improper to award attorney fees on general equitable principles. See, e.g., *Gove v Gove*, 71 Mich App 431, 436; 248 NW2d 573 (1976). Thus, if the probate court awarded attorney fees solely on the basis of equitable principles, the court erred as a matter of law. Because we are unable to determine the authority pursuant to which the probate court awarded attorney fees, we are unable to determine if the fees were properly awarded. The dissent concludes that the attorney fees were properly awarded as a sanction for over-billing the trust and failing to adhere to the court's order. However, the trustee was already sanctioned for this misconduct when the arbitrator reduced the fees and expenses relating to the administration of the trust by $118,510. There is no support in the lower-court record for the dissent's speculation that the probate court awarded attorney fees for this period as a sanction for the trustee's earlier misconduct that was the focus of the arbitration. It is, therefore, imperative that we remand this matter for the probate court to explain its basis for awarding attorney fees. We vacate the award of attorney fees and remand for reconsideration and a statement of the reasons for the award.

Affirmed in part, vacated in part, and remanded for proceedings consistent with this opinion. Jurisdiction is not retained.

Hoekstra, J., concurred.

O'Connell, J. (concurring in part and dissenting in part). I concur with the majority opinion except the portion of the opinion that addresses the award of attorney fees and costs. With regard to this award, I would affirm the probate court's order in part, but remand this case for imposition of actual appellate costs and attorney fees.

In addition to actual appellate costs, I would require that petitioner reimburse the beneficiaries for the entire amount of attorney fees originally charged. This reimbursement would be a sanction for grossly over-billing the trust. This sanction should be a clear message that trustees have a duty to deal fairly, wisely, and prudently when dealing with the property of another. See MCL 700.7302; *Weathervane Window, Inc v White Lake Constr Co*, 192 Mich App 316, 325-326; 480 NW2d 337 (1991). Stated another way, those trustees who fail to act in a professional, fiduciary manner should be held personally responsible for their unprofessionalism. Trust estates are not the personal assets of the trustee; the trustee's job is to maintain the trust, not to exploit it or turn the trust assets into a windfall for himself. See *id.* at 325.

The trustee in this matter was called on to administer assets that ultimately totaled $3,083,416. The trustee charged costs and attorney fees of $754,513. This did not include the final four months' work, the final accounting, which was disallowed, or the costs of this

appeal.[1] In an unusual and finely worded opinion, the learned arbitrator stated, "The arbitrator is forced to the conclusion that the fees and expenses relating to the administration of the trust were unreasonable."

Moreover, the probate court entered an order prohibiting petitioner from further dissipating the trust assets without first receiving written approval from the beneficiaries. The probate court also ordered the trustee to file a final accounting within ten days. In addition, the probate court ordered petitioner to reimburse the beneficiaries a total of $118,510 for unreasonable administration fees. Unfortunately for petitioner, it did not file the final accounting until four months later; thus, petitioner was in direct violation of a court order. See, generally, MCL 600.1715; *In re Contempt of Rochlin*, 186 Mich App 639, 646; 465 NW2d 388 (1990) (civil contempt for violation of a court order is "the failure of the contemnor to perform some act still within his power to perform, punishable by an indefinite coercive sentence"). Furthermore, since no appeal was taken from the probate court's order determining that the trust was over-billed by $118,510, this order conclusively establishes that the trust was over-billed. Cf. *Knoth v A Harvey's Sons Mfg Co*, 212 Mich 415, 421; 180 NW 367 (1920).

MCL 700.7302 states:

> Except as otherwise provided by the terms of the trust, the trustee shall act as would a prudent person in dealing with the property of another, including following the standards of the Michigan prudent investor rule. If the trustee

---

[1] Initially, petitioner billed the trust $458,415 in administrative fees. This amount was reduced by the arbitrator to $324,905.

has special skills or is named trustee on the basis of representation of special skills or expertise, the trustee is under a duty to use those skills.

Over-billing the trust in the amount of $118,510 and failing to adhere to the court's order constitute a breach of the trustee's duty to prudently administer this trust. See *Weathervane Window, supra*. These actions on the part of the trustee, in my opinion, constitute misconduct and a violation of MCL 700.7302.

The circuit court possesses inherent authority independent of statute or court rule to sanction misconduct by a party or an attorney appearing before it. *Persichini v William Beaumont Hosp*, 238 Mich App 626, 639-641; 607 NW2d 100 (1999). We review for an abuse of discretion the probate court's exercise of its inherent authority to sanction misconduct. *Id.* at 642; *Brenner v Kolk*, 226 Mich App 149, 159-160; 573 NW2d 65 (1997) (also noting that "this Court . . . recognize[s] a court's authority to sanction litigant misconduct"). A probate court abuses its discretion when the result is so palpably and grossly contrary to fact and logic that it evidences perversity of will or the exercise of passion or bias rather than the exercise of discretion. *Persichini, supra* at 632; *Schoensee v Bennett*, 228 Mich App 305, 314-315; 577 NW2d 915 (1998).

Failing to timely file the final accounting in violation of a court order and over-billing a trust constitutes misconduct of the highest order. Thus, the probate court did not abuse its discretion in assessing costs and attorney fees for this misconduct. See *Persichini, supra*. As I previously stated, if I were the probate judge, I would have disallowed all the attorney fees billed to the estate as a sanction for this

egregious misconduct. See, generally, e.g., *Moser v Moser*, 184 Mich App 111, 116-117; 457 NW2d 70 (1990) (abuse-of-discretion standard of review in a divorce case permits this Court to reverse if it would have reached a different result).[2]

Circuit courts have a duty to sanction those attorneys who behave in an unprofessional manner. See Code of Judicial Conduct, Canon 3(B)(3) ("[A] judge should take . . . appropriate disciplinary measures against a . . . lawyer for unprofessional conduct . . . ."). I believe that this duty extends both to the parties to the proceeding and those affected by court decisions. See, generally, *Brenner, supra;* Code of Judicial Conduct, Canon 3(A)(2) ("[A] judge . . . should enforce reasonable rules of conduct in the courtroom."). One published opinion serves notice to all that the courts of this state will not tolerate such unprofessional behavior.

I would affirm the decision of the probate court in part and remand this case for further proceedings consistent with this opinion.

---

[2] The majority states that the trustee was already sanctioned when it had to return money that was legally trust property to the trust. I prefer to call this restitution of funds that were misappropriated but not earned. Compare *Michigan Bell Tel Co v Sfat*, 177 Mich App 506, 513; 442 NW2d 720 (1989) ("By definition, a sanction is 'a penalty or punishment provided as a means of enforcing obedience to a law.'") (citation omitted), and Black's Law Dictionary (7th ed) (Restitution is defined as the "[r]eturn or restoration of some specific thing to its rightful owner or status"). I also note that the trustee clearly was not previously sanctioned for violating the court order. See MCL 600.1715; *In re Contempt of Rochlin, supra.*